**Ernest Allen COOK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 10S00–9707–CR–394.

Supreme Court of Indiana.

Sept. 6, 2000.

Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice

After a jury trial Ernest Allen Cook was convicted of murder, and the trial court sentenced him to fifty-five years imprisonment. In this direct appeal Cook raises five issues for our review which we rephrase as follows: (1) did the trial court abandon its role of impartiality and assume the role of a prosecutor by *sua sponte* interposing objections during Cook's cross-examination of witnesses; (2) did the trial court err by refusing to allow evidence that the victim once acted as a confidential informant; (3) did the trial court improperly engage in *ex parte* communication with the jury; (4) did the trial court err by allowing into evidence testimony concerning Cook's uncharged misconduct; and (5) did the trial court err by refusing to allow the testimony of Cook's eyewitness identification expert. We affirm.

### Facts

The record shows that in the evening hours of March 16, 1996, Cook, along with companion David Stillwell, entered Jesse's Bar in Charlestown, Indiana. A number of other people were also present including the victim, David Justice. While Stillwell was arguing with another bar patron, Justice approached carrying a pool cue. Stillwell told Justice, "Whoa, there ain't [no] problem here," and Justice walked away. Shortly thereafter Cook produced a handgun and fired at Justice who fell to the floor. A later autopsy revealed that Justice died as a result of a single gunshot wound to the chest. Cook was arrested and charged with murder. After a jury trial, he was convicted as charged and sentenced to fifty-five years imprisonment. This direct appeal followed. Additional facts are set forth below where relevant.

### Discussion

### I.

■ Cook first complains the trial court erred by *sua sponte* interposing objections on five different occasions during the defense's cross-examination of witnesses and by elaborating on an objection posed by the State. According to Cook, his conviction should be reversed because the trial judge abandoned his position of impartiality and assumed the role of a prosecutor. The record shows that on three of the occasions the trial court noted the questions posed by Cook were compound. R. at 584–85, 1009, 1025.[1] On the other two occasions the trial court noted that Cook failed to lay a proper foundation for the introduction of evidence. R. at 502, 746. As for the trial court elaborating on the State's objection, the record shows that at one point Cook cross-examined a police officer about a diagram of the crime scene the officer had sketched. After sustaining the State's objection on grounds that a question Cook posed called for an opinion concerning other witness's testimony, the trial court commented, "In addition I also feel the question is vague and speculative." R. at 1014.

■ A trial before an impartial judge is an essential element of due process. *Timberlake v. State,* 690 N.E.2d 243, 256 (Ind.1997) *cert. denied,* 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). This impartiality is important due to the great respect that a jury accords the judge and the added significance that a jury might give to any showing of partiality by the judge. *Id.* Therefore, a trial court has a duty to remain impartial and refrain from making unnecessary comments or re-

---

1. On one noteworthy occasion, the trial court interposed an objection by declaring "Objection Your Honor – objection counsel that's a compound question. Break it down." R. at 1009.

marks. *Harrington v. State,* 584 N.E.2d 558 (Ind.1992). We observe that the trial judge's "vague and speculative" remark was unnecessary especially given that he had already sustained the State's objection. We also observe that interrupting Cook's cross-examination of a witness declaring "Objection Your Honor," *see infra* n. 1, is obviously more appropriate for an advocate than a judge hearing the case. However, not all untoward remarks by a judge constitute reversible error. *Parker v. State,* 567 N.E.2d 105, 112 (Ind.Ct.App. 1991) (citing *Gaynor v. State,* 247 Ind. 470, 217 N.E.2d 156 (1966)). The remarks must harm the complaining party or interfere with the right to a fair trial. *Id.* Just as important, "[t]he court does not engage in improper advocacy by stopping improper cross-examination on its own motion." *Bruce v. State,* 268 Ind. 180, 375 N.E.2d 1042, 1066 (1978).

Our review of the record shows that in each instance where the trial court interrupted the cross-examination, the questions posed were indeed compound or did not serve to establish a proper foundation for the introduction of evidence. In fact, the record shows the trial court exercised restraint by refraining from making similar objections on other occasions or questioning witnesses itself. *See McCord v. State,* 622 N.E.2d 504, 511 (Ind.1993) (a trial judge may question a witness in an effort to promote clarity or dispel obscurity, so long as the questioning is done in an impartial manner and does not improperly influence the jury). In any event, the critical question here is whether the trial court's remarks harmed Cook or denied him a fair trial. We think not. The record shows that after admonishment by the trial judge, Cook simply rephrased the questions and proceeded with cross-examination. There is no indication in this record that Cook was harmed by the judge's remarks. Further, Cook has not shown that the judge's remarks interfered with his right to a fair trial. We find no error on this issue.

## II.

■ Cook next contends the trial court erred in refusing to allow evidence that the victim David Justice had acted as a confidential informant. The essential facts are these. Before trial, the trial court conducted a hearing on the State's motion in limine to preclude any evidence concerning Justice's prior activities as a confidential informant. Testimony at the hearing revealed that between October 1994 and April 1995 Justice worked as an informant for State Trooper Radford Guinn. During that period Justice assisted Trooper Guinn in purchasing narcotics from numerous people, some of whom were arrested and ultimately convicted. Testimony at the hearing also revealed that none of the witnesses in this case were among the people from whom the Trooper had purchased narcotics. After the hearing the trial court granted the State's motion. At trial, Cook sought to introduce evidence that the victim acted as a confidential informant. The trial court re-affirmed its ruling on the State's motion in limine and refused to allow the evidence.

Cook's argument on appeal, as well as before the trial court, to support the introduction of the confidential informant evidence is a little difficult to follow. However, as best we can discern, he seems to contend that informants are generally despised and thus any number of people would have a motive to harm them. Thus, the argument continues, because Justice was an informant, other patrons who were present at the bar on the night of the shooting had a motive to kill him. Accordingly, Cook contends, he should have been permitted to introduce evidence of Justice's status as an informant to demonstrate that someone else shot the victim.

■ It is true that evidence of motive is always relevant in the proof of a crime. *Ross v. State,* 676 N.E.2d 339, 346 (Ind.1996). In this case, however, Cook presented no such evidence. His contention that other patrons in the bar might

have had a motive to kill Justice is not evidence. Indeed in his brief before this Court, Cook has neither argued nor shown that any of the bar patrons was aware that Justice at one time acted as a police informant or that any was even acquainted with him. The State presented the only evidence on this point during the hearing on the motion in limine. Testimony revealed that none of the State's witnesses who were present at the bar on the night of the shooting was the subject of the Guinn/Justice drug buys. Absent some evidence linking Justice to a third party, Cook's statement that someone else had a motive to kill Justice amounts to mere speculation.[2]

■■■■■ Motive aside, the question remains whether the confidential informant evidence was otherwise admissible. More precisely, was evidence of Justice's status as an informant relevant to show that a person other than Cook committed the crime? We conclude it was not. Evidence which tends to show someone else committed the crime logically makes it less probable that the defendant committed the crime, and thus meets the definition of relevance in Rule 401.[3] *Joyner v. State*, 678 N.E.2d 386, 389 (Ind.1997). However, the mere fact of the victim's status as a police informant is not evidence tending to show that someone other than Cook committed the charged crime. In essence, evidence that Justice acted as an infor-

mant was not relevant, and the trial court properly excluded it.

### III.

■■■■■ Cook's next claim of error has to do with the jury being transported by bus to view the crime scene. In his initial brief Cook contended "the judge traveled with the jury on the bus. . . ." Brief of Appellant at 18. Although Cook did not actually allege the trial judge engaged in any improper communication with the jury during the bus ride, Cook suggested that we should infer the trial judge engaged in ex parte communication by virtue of the judge's presence on the bus and because the record is silent as to what occurred during the trip. In response to the State's argument, Cook conceded in his reply brief that "the record does not clearly establish the trial court judge rode on the bus with the jury to view the crime scene in the case at bar." Reply Brief at 3. However, he invites us to infer that the trial judge did so. Cook piles inference upon inference and then asserts error. This claim is without merit and we decline to address it further.

### IV.

■■■■■ Cook next contends the trial court erred by allowing into evidence testimony concerning his physical altercation with another person a few hours before the shooting. According to Cook the altercation was an inadmissible prior bad act

---

**2.** In a related argument, Cook contends the trial court erred also in prohibiting him from questioning ten of the State's witnesses concerning their prior criminal records. There are at least two problems with this argument. First, the record shows the State filed a motion-in-limine to preclude Cook from exploring the criminal records of the ten witnesses. For nine of the ten, Cook expressly said, "No objection" when the trial court asked for Cook's response to the State's motion. R. at 400–402. Second, and more importantly, a ruling on a motion in limine does not determine the ultimate admissibility of the evidence. Rather, the determination is made by the trial court in the context of the trial itself. *Clausen v. State*, 622 N.E.2d 925, 927–28

(Ind.1993). To preserve error, a party, out of the hearing of the jury, must propose to ask a certain question at trial and have the court prohibit it. Failure to offer the excluded material constitutes waiver of the issue. *Logston v. State*, 535 N.E.2d 525 (Ind.1989). Here, Cook made no attempt at trial to question any of the State's witnesses concerning their prior criminal records. The issue is therefore waived for review.

**3.** Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Ind. Evidence Rule 401.

governed by Indiana Evidence Rule 404(b). The record shows that approximately four hours before the Justice shooting, Cook was present in an American Legion Hall where he confronted a visitor. For no apparent reason Cook struck the visitor in the mouth. When asked why he did so, Cook responded that he did not know and apologized. R. at 1092. Over Cook's objection the trial court permitted testimony concerning the altercation. The State argued and the trial court agreed that the testimony was admissible to show Cook's state of mind at the time of the shooting. The State explained its state of mind theory by declaring "if the Defendant can, being unprovoked, punch a man in the face he can certainly then four hours later when he has access – when he does have a gun shoot a man for no reason." R. at 1087.[4]

Under Rule 404(b) "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *Spencer v. State*, 703 N.E.2d 1053, 1055 (Ind.1999). Although couching its argument in terms of state of mind, it is apparent the State sought to introduce the evidence for the purpose of demonstrating that because Cook had acted violently in the recent past, he likely acted in conformity therewith and shot the victim in this case. This is the forbidden inference that 404(b) specifically prohibits. *Byers v. State*, 709 N.E.2d 1024, 1026–27 (Ind.1999) ("[R]ule [404(b)] is designed to prevent the jury from making the 'forbidden inference' that prior wrongful conduct suggests present guilt."). We conclude, therefore, that the trial court erred by allowing into evidence testimony concerning Cook's altercation with the patron at the American Legion Hall.

However, not every trial error compels reversal. The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Barker v. State*, 695 N.E.2d 925, 931 (Ind.1998). As seen more particularly in the following section, the State presented substantial evidence of Cook's guilt independent of the testimony concerning the altercation. We are convinced there is no substantial likelihood that the erroneously admitted evidence contributed to the jury's verdict. Hence, although the trial court erred by allowing the questioned testimony into evidence, the error was harmless.

## V.

For his last allegation of error Cook maintains the trial court abused its discretion by refusing to allow the testimony of his expert on the subject of the reliability of eyewitness identification. The record shows that in a hearing outside the presence of the jury Cook tendered an offer of proof by way of testimony from Dr. Roger Terry, a social psychologist and professor at Hanover College. Dr. Terry had both studied and participated in research concerning eyewitness testimony and identification. R. at 1200. Also, he had previously testified as an expert in Indiana courts, both civil and criminal, on

---

4. The State used the same rationale to support its view that the evidence was also admissible to show motive, intent, lack of mistake, or accident. However, the evidence was not admissible to demonstrate motive because "[a] bad relationship between the defendant and another person does not bear on the defendant's motive to harm the victim and will rarely be either relevant or admissible to show motive for the charged conduct." *Hicks v. State*, 690 N.E.2d 215, 222 n. 12 (Ind.1997). Similarly, the evidence was not admissible to show intent because Cook did not argue a contrary intent. *See Wickizer v. State*, 626 N.E.2d 795, 799 (Ind.1993) ("The intent exception in Evid. R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent."). Finally, Cook did not argue that the shooting was a mistake or accident, therefore the evidence was not admissible to prove lack of mistake or accident.

the reliability of eyewitness testimony. *Id.* Among other things Dr. Terry testified about the effect of alcohol on a witness' ability to perceive and recall events, R. at 1205; how the environment surrounding an event (referred to as "social facilitation") can affect the recall of an eyewitness, R. at 1208; and the possibility of witness contamination. R. at 1216.

The trial court acknowledged that as a professor Dr. Terry was qualified and "knowledgeable in a general sense of memory recognition[,] contamination by other witnesses[,] the effect that alcohol may have on the encoding process[,] social facilitation [,][and] social cognition." R. at 1248. However, the trial court excluded the proffered testimony reasoning, among other things, that it was not reliable in this case because there were too many variables, the testimony was general in nature, and would not be helpful in the jury's task of assessing the credibility of individual witnesses.

◼ Indiana Evidence Rule 702 permits expert witness testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." We review the trial court's decision to admit or exclude evidence under this rule only for an abuse of discretion. *Taylor v. State,* 710 N.E.2d 921, 923 (Ind.1999). We have acknowledged that the "weight of authority favors admitting expert testimony as to general hazards of identification evidence in certain circumstances." *Hopkins v. State,* 582 N.E.2d 345, 353 (Ind.1991); *compare United States v. Larkin,* 978 F.2d 964, 971 (7th Cir.1992), *cert. denied,* 507 U.S. 935, 113 S.Ct. 1323, 122 L.Ed.2d 709 (1993) (ruling that such testimony will not aid the jury because it addresses an issue of which the jury is generally aware). We agree with the Court of Appeals that "trial courts might be well advised to permit [eyewitness

identification] expert testimony in order to assist the jury in its evaluation of the evidence." *Reed v. State,* 687 N.E.2d 209, 213 (Ind.Ct.App.1997).

Nonetheless, the circumstances under which expert eyewitness identification testimony is permitted are fact sensitive and must be assessed on a case-by-case basis. The record here shows the State called numerous witnesses who were present at the Bar on the night of the shooting, most of whom only heard the sound of a shot being fired. However, the testimony of four witnesses was particularly instructive. Although he could not determine the type of weapon used, witness Elmer Abott testified that he saw Cook produce a handgun from his pocket and fire it at the victim. R. at 793, 796. Witness Paul Nash testified that moments before hearing a gunshot, he observed "something" come from Cook's pocket in the "shape like a gun or something" and that Cook pointed it at the chest of a man whom Nash did not know. R. at 838, 840. Witness Kerry Badger testified that she observed Cook remove something from his pocket and bring his hand up to the victim's chest, after which she saw sparks, and the victim fell to the floor. R. at 870–71. Witness Donald Judson testified that he heard a muffled sound that resembled a weapon being fired and observed a spark go off between Justice and Cook. R. at 854–55.

In this appeal, Cook maintains that "most of the State's witnesses who were in a position to view the incident had been drinking heavily." Brief of Appellant at 21. He also insists that after the shooting and even after the police arrived on the scene "all the witnesses (including people the defense would characterize as potential suspects) were allowed to sit together and discuss what had occurred." *Id.* Thus, according to Cook, his expert witness should have been allowed to explain to the jury the impact of these factors on eyewitness identification.[5] The problem with

5. In further support, Cook points to the fol-

lowing exchange that occurred during the

Cook's argument is that he failed at trial to establish the assertions he now makes on appeal. During cross-examination, for example, Cook mentioned alcohol consumption with each witness but did not explore the matter. Elmer Abbot testified that he had consumed six to eight beers earlier that day, but drank nothing while present at Jesse's Bar. R. at 793, 806. Paul Nash testified that he had consumed "a few beers" before arriving at Jesse's Bar. R. at 844. Kerry Badger testified that she drank only a "sip or two" of beer at Jesse's bar, but consumed no alcoholic beverages before arriving. R. at 868. Donald Judson testified that he consumed several beers while present at Jesse's Bar. R. at 852. Further, the record shows that Cook neither challenged the witnesses' in-court or out-of court identifications, nor questioned the witnesses concerning whether they discussed the events with each other after the shooting. In essence, Cook failed to establish the factual predicate upon which his expert's testimony would have rested.

The record shows that none of the witnesses who identified Cook as the shooter was equivocal in his or her testimony. In fact, Paul Nash knew Cook because they were both members of the American Legion, and Cook was a classmate of Nash's older brother. R. at 833. The record also shows that although the four witnesses' account of events varied in minor details, they were essentially the same: Cook was standing in a small hallway inside the bar with two to three other men, David Justice and one of the other men exchanged words, and Cook produced a handgun and fired at Justice.

Cases that more typically lend themselves to the admission of expert eyewitness identification testimony generally involve a single eyewitness and identification is the primary issue at trial. Here, by contrast, there were several eyewitnesses, and Cook did not present this case as one of mistaken identity. Rather, he seemed to have contended that Justice was a confidential informant who was shot by someone with a grudge and that the bar patrons were covering for that person. In any event, the number of witnesses identifying Cook as the shooter, the consistency of their account of events, the absence of any evidence of collaboration or interaction among the witnesses, and the absence of any evidence that alcohol consumption impaired the witnesses' abilities to perceive and recall events support the view that expert testimony in this case would not have assisted the jury in understanding the evidence or determining any fact in issue. Although we might have reached a different conclusion, we cannot say the trial court abused its discretion in refusing to allow testimony of Cook's expert on the subject of the reliability of eyewitness identification.

### Conclusion

We affirm the trial court's judgment.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

hearing on his offer of proof. Responding to the trial judge's question: "Would you agree generally that two witnesses are better than one to the same event, three witnesses are better than two, four witnesses are better than three, two, or one?" Dr. Terry testified, "If they are independent witnesses yes sir. Yes your Honor.... If they are contaminated witnesses[,] if they've interacted with each other[,] if they have conversed, if they have shared stories, if they have engaged in the social facilitation process, we're talking one witness." R. at 1215–16.