**Roger L. BROWN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 12A02–0901–CR–1.**

Court of Appeals of Indiana.

Aug. 21, 2009.

John D. Fierek, Voyles, Zahn, Paul, Hogan, & Merriman, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Roger L. Brown challenges his convictions for class D felony operating a vehicle while intoxicated resulting in bodily injury. We affirm.

### Issues

I.  Whether the trial court abused its discretion by admitting evidence of Brown's horizontal gaze nystagmus test;

II. Whether the trial court abused its discretion in admitting evidence of Brown's blood draw; and

III. Whether the evidence is sufficient to sustain the convictions.

## Facts and Procedural History

On August 19, 2006, Brown left Lebanon, driving north toward Frankfort on State Road 39. At the same time and on the same road, Tonya Mongonia and her five-year-old daughter were driving southbound. The two vehicles collided in the northbound lane about one mile south of State Road 39 and County Road 430 South. Skid marks from Brown's truck indicated that he was driving north in the southbound lane at nearly seventy miles per hour. Brown nearly drove off the road before moving back into his proper lane just before impact.

Indiana State Police Trooper Richard Kelly came upon the accident at around 4:00 p.m. and approached Brown, who was alone in the truck. Trooper Kelly observed that Brown's eyes were glassy and bloodshot, that his speech was slurred, that he smelled of alcohol, and that he was unsteady when he exited his truck. Brown admitted that he had consumed four or five beers in Lebanon. Trooper Kelly placed Brown in his patrol car while he went to check on the second vehicle. While in Trooper Kelly's vehicle, Brown defecated in his pants. Two other officers who later arrived on the scene also noticed that Brown's eyes were glassy and bloodshot and that he smelled of alcohol.

During the accident investigation, Trooper Michael Krueger administered a horizontal gaze nystagmus ("HGN") test to Brown. Brown failed the HGN test after he exhibited four clues in the first two parts of the test. Trooper Krueger began to administer the walk-and-turn test, but Brown was unable to stay in the instructional stance and kept stepping off the line. Brown's balance was so unsteady that Trooper Krueger had to stop the test out

of concern for Brown's safety. Brown consented to submit to a chemical test to determine his blood alcohol content. Brown was first transported to the Clinton County Jail for a chemical breath test, which was unsuccessful due to an invalid sample. Brown was then transported to St. Vincent's Hospital–Frankfort for a consensual blood draw. Jennifer Zook, a certified lab technician, performed the blood draw on Brown. Subsequent testing showed Brown to have a blood alcohol content of .14%.

On October 4, 2006, the State charged Brown with two counts of class C felony operating a vehicle with a blood alcohol content of .08 % or more resulting in serious bodily injury, two counts of class C felony operating while intoxicated resulting in serious bodily injury, one count of class D felony operating while intoxicated, and one count of class D felony operating with a blood alcohol content of .08% or more.

On August 25, 2008, the State amended its charges against Brown to two counts of class D felony operating a vehicle with a blood alcohol content of .08% or more resulting in serious bodily injury, two counts of class D felony operating while intoxicated resulting in serious bodily injury, one count of class A misdemeanor operating while intoxicated, and one count of class C misdemeanor operating with a blood alcohol content of .08% or more. On October 10, 2008, the trial court convicted Brown of both counts of class D felony operating a vehicle while intoxicated resulting in serious bodily injury. This appeal ensued.

## Discussion and Decision

### I. Admission of HGN Test

■ Brown first argues that the trial court abused its discretion by admitting evidence regarding his HGN test because the State failed to lay a proper foundation.

Generally, a trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Combs v. State,* 895 N.E.2d 1252, 1255 (Ind.Ct.App.2008). We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. *Id.*

In *Cooper v. State,* 761 N.E.2d 900 (Ind. Ct.App.2002), we stated that the proper foundation for the admission of an HGN test consists of describing the officer's education and experience in administering the test and showing that the procedure was properly administered. *Id.* at 903. Here, Trooper Krueger testified that he had attended the law enforcement academy and had completed a field training program after graduating from the academy. Part of Trooper Krueger's training included how to administer field sobriety tests, specifically the HGN test.

The HGN test consists of three stages, giving a total of six clues as to whether the defendant is intoxicated. A defendant who exhibits four clues fails the test. The record indicates, and Brown does not dispute, that Trooper Krueger performed the first stage properly. Trooper Krueger testified that he remembered checking Brown's eyes for equal tracking and resting nystagmus, and that his pupils were not unequal. The evidence most favorable to the judgment also indicates that Trooper Krueger performed the second stage correctly by holding the stimulus at twelve inches from Brown's eyes and checking for a lack of smooth pursuit.[1] The trial court did not

admit evidence regarding the third phase of the HGN test, after Trooper Krueger admitted that he failed to properly check that the whites of Brown's eyes were showing, as required by protocol. Still, Brown failed the HGN test because he exhibited four clues in the first two correctly administered stages. We cannot conclude that the trial court abused its discretion in admitting this evidence.

### II. Admission of Blood Draw Evidence

■ Brown next argues that trial court abused its discretion in admitting the results of his blood alcohol test because the State failed to lay a proper foundation. First, Brown argues that the State failed to comply with Indiana Code section 9–30–6–6(a), which provides that blood samples collected at the request of a law enforcement officer as part of a criminal investigation must be obtained by "[a] physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician." Brown contends that the State failed to establish that Zook was acting under the direction of, or under a protocol prepared by, a physician. "The foundation for the admission of laboratory blood drawing and testing results, by statute, involves technical adherence to a physician's directions or to a protocol prepared by a physician." *Combs,* 895 N.E.2d at 1256, (quoting *Hopkins v. State,* 579 N.E.2d 1297, 1303 (Ind.1991)).

■ We agree with Brown that the State failed to establish that Zook collected his blood under the direction of, or under a protocol prepared by, a physician. The State called Zook to testify about St. Vincent's protocol and the protocol that she used to draw Brown's blood. St. Vincent's

---

1. Brown contends that the trial court erred in finding that the stimulus was twelve inches away in light of contradictions in Trooper Krueger's deposition and trial testimony. On appeal, we do not reweigh evidence or assess witness credibility. *Bahm v. State,* 789 N.E.2d 50, 57 (Ind.2003). Brown's argument is simply an invitation to reweigh the evidence in his favor, which we must decline.

had a blood sample lab protocol, which had been approved by a physician. Zook testified that she performed the blood draw in accordance with what she had been taught in school, not in accordance with St. Vincent's protocol. Zook was not even able to recall how many steps are in St. Vincent's protocol. Zook used a cotton ball soaked with water instead of using Betadine as required by St. Vincent's protocol. In sum, the State failed to lay a proper foundation for the admission of Brown's blood test results pursuant to Indiana Code Section 9–30–6–6(a).

■ Brown also argues that the State failed to comply with Indiana Code Section 9–30–6–6(j), which provides,

A law enforcement officer may transport the person to a place where the sample may be obtained by any of the following persons who are trained in obtaining bodily substance samples and who have been engaged to obtain samples under this section:

(1) A physician holding an unlimited license to practice medicine or osteopathy.

(2) A registered nurse.

(3) A licensed practical nurse.

(4) An emergency medical technician-basic advanced (as defined in IC 16–18–2–112.5).

(5) An emergency medical technician-intermediate (as defined in IC 16–18–2–112.7).

(6) A paramedic (as defined in IC 16–18–2–266).

(7) A certified phlebotomist.

■ Brown contends that Zook, as a certified lab technician, is not a person who is "trained in obtaining bodily substance samples" for purposes of this stat-

ute.[2] We agree. "It is not within the province of this Court to expand or contract the meaning of a statute by reading into it language which will, in the opinion of the Court, correct any supposed omissions or defects therein." *Grody v. State*, 257 Ind. 651, 659–60, 278 N.E.2d 280 (1972). Zook testified that she was a certified medical lab technician who was trained to draw blood, but was not a certified phlebotomist. If the General Assembly intended subsection (j) to include certified lab technicians instead of, or in addition to, certified phlebotomists, it easily could have done so. It did not do so, however, and therefore we must conclude that the trial court abused its discretion in admitting the results of Brown's blood test pursuant to Indiana Code Section 9–30–6–6(j).

■ The State contends that any error in admitting the results of Brown's blood test was harmless. Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party. *Montgomery v. State*, 694 N.E.2d 1137, 1140 (Ind.1998). In viewing the effect on a defendant's substantial rights, we look to the probable impact on the factfinder. *Cook v. State*, 734 N.E.2d 563, 569 (Ind.2000). The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt such that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Id.*

The State was not required to establish Brown's blood alcohol level to prove that Brown was intoxicated. The State presented overwhelming evidence of Brown's intoxication, including his failure of the HGN test, the odor of alcohol, his admis-

---

**2.** Phlebotomy is defined in pertinent part as the letting of blood for transfusion, apheresis, diagnostic testing, or experimental procedures. *Webster's New Int'l Dictionary* 1698

(3rd ed.2002). As a certified lab technician, Zook was certified to practice phlebotomy, but was not a certified phlebotomist.

sion of consuming several beers, glassy and bloodshot eyes, unsteady balance, defecating in his pants, and the failure of the walk-and-turn test. We conclude that given this substantial independent evidence of guilt, there is no substantial likelihood that the erroneously admitted evidence contributed to Brown's convictions.

### III. Sufficiency of the Evidence

Finally, Brown claims that there was insufficient evidence to support his convictions. When reviewing a claim of insufficient evidence, we do not reweigh the evidence, nor do we reevaluate the credibility of witnesses. *Rohr v. State*, 866 N.E.2d 242, 248 (Ind.2007). We will consider only the evidence most favorable to the judgment and will draw all reasonable inferences therefrom. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable fact finder could find the defendant guilty beyond a reasonable doubt. *Id.*

■■■ To convict Brown of class D felony operating while intoxicated, the State was required to prove that he: (1) operated a motor vehicle, (2) while intoxicated, (3) resulting in bodily injury. Ind. Code § 9–30–5–4(a)(3). Brown first argues that the State failed to establish that he was intoxicated. Indiana Code Section 9–13–2–86 defines intoxication in pertinent part as under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Impairment can be established by evidence of the following: "(1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; and (6) slurred speech." *Fought v. State*, 898 N.E.2d 447, 451 (Ind.Ct.App.2008).

Here, Brown failed an HGN test and admitted to police that he drank four or five beers. Brown defecated in his pants, and his eyes were bloodshot and glassy. Three different officers testified that they smelled alcohol on Brown. Brown was also unsteady when he exited his truck and continued to exhibit unsteady balance when he attempted to perform the walk-and-turn test. Brown's speech was slurred, and, while he was at the hospital, he had difficulty manipulating a pen. The evidence most favorable to the judgment is sufficient to establish beyond a reasonable doubt that Brown was intoxicated.

■■■ Brown next argues that the State failed to establish he caused the victims' injuries. The State need not establish a causal link between a driver's intoxication and the fact that injury resulted from his driving. *Micinski v. State*, 487 N.E.2d 150, 154 (Ind.1986). If the driver's conduct caused the injury, he commits the crime; if someone else's conduct caused the injury, he is not guilty. Id. In other words, the State was not required to prove that Brown's *intoxication* caused the injury, only that Brown's conduct caused the injury. Here, tire marks indicated that Brown was in the wrong lane immediately before the crash. Brown was also traveling nearly seventy miles per hour in a fifty-five-mile-per-hour zone. There is no evidence to support Brown's claim that a third vehicle was involved in the crash. These facts are sufficient to establish beyond a reasonable doubt that Brown's driving caused the victims' injuries. Brown's arguments to the contrary are simply an invitation to reweigh the evidence in his favor, which we must decline. Accordingly, we affirm Brown's convictions.

Affirmed.

MAY, J., and BROWN, J., concur.