Brett BOSTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 32A01–1008–CR–421.

Court of Appeals of Indiana.

April 13, 2011.

Russell T. Clarke, Jr., Emswiller Williams Noland & Clarke, P.C., Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Brett Boston brings this interlocutory appeal from the denial of his motion to suppress the results of his blood alcohol test.

We affirm.

### ISSUES

1. Whether the trial court erred in denying Boston's motion to suppress.
2. Whether the trial court erred in retroactively applying recent legislative amendments to the applicable statute in its determination of Boston's claim.

### FACTS

On October 11, 2009, Boston was arrested on suspicion of operating a motor vehicle while intoxicated.[1] Boston requested a

---

1. Boston did not include a copy of the charging information or probable cause affidavit in

blood alcohol test, also known as a blood draw. He was transported to Hendricks Regional Health Hospital, where phlebotomist[2] Kimberly Cannon drew his blood. On October 15, 2009, before Boston's test results were returned, the State charged him with class A misdemeanor operating a motor vehicle while intoxicated, and the infraction offenses of failure to exhibit registration and failure to signal.

On December 17, 2009, the State moved to amend its charging information by adding a count of class A misdemeanor operating a motor vehicle with a BAC of .15 or greater to the charging information. The trial court granted the motion and ordered Boston's driver's license "suspended immediately." (CCS 2).

On May 18, 2010, Boston deposed Cannon. She testified that she had earned her emergency medical technician (EMT) certification in California in 1994, which consisted of two hundred hours of class work and forty hours of practicals. She further testified that she has performed thousands of blood draws, including approximately two hundred blood alcohol tests pursuant to court order or at the request of law enforcement. In addition, she testified that she "always follow[s] policy and procedures" of Hendricks Regional Health Hospital. (Cannon Depo. at 9). Under cross-examination, the following exchange occurred:

[Defense counsel]: * * * Now would you please tell me, in detail, the language of the written protocol by the hospital since you've been there for seven (7) years?

[Cannon]: I don't have, I don't have that memorized, sir.

[Defense counsel]: Okay. But I assume you don't refer to it, I gather, when you do the blood draws?

[Cannon]: Correct.

[Defense counsel]: So I, I mean I assume you remember what it is?

[Cannon]: It's ... (laughing) uh, I don't know what it is detail, by detail.

[Defense counsel]: You don't know what the protocol is?

[Cannon]: I don't know what detail, by detail the protocol is.

(Cannon Depo. at 31).

On June 11, 2010, Boston filed a motion to suppress results of the blood alcohol test wherein he argued that "the person who collected Mr. Boston's blood was neither under the direction of or following a protocol prepared by a physician." (App.6). On June 22, 2010, the trial court conducted a suppression hearing. Cannon testified on behalf of the State. She testified that notwithstanding her EMT certification, Hendricks Regional Health Hospital had also required her to complete six weeks of orientation training, as well as "annual competencies" and "supervisor competencies ... proving [her] competenc[y]." (Tr. 9). She further testified that she has been employed at the hospital for seven years.

Cannon testified that she had misunderstood defense counsel's deposition questions regarding the protocol, believing that he had wanted her to give a verbatim recitation of the ten-step Hendricks Regional Health Hospital "Alcohol Specimen Collection Procedure for Legal Alcohol Orders." (State's Ex. 1). Over defense counsel's continuing objections that the State was attempting to "circumvent the

___

his Appendix.

2. Phlebotomy is defined, in part, as the letting of blood for transfusion, diagnostic testing, or experimental procedures. *Brown v. State,* 911 N.E.2d 668, 674 (Ind.Ct.App.2009) (citing Webster's New Int'l Dictionary 1698 (3rd ed.2002)).

testimony that's already been given under oath by [Cannon]," (tr. 11), Cannon testified as follows:

> [State]: Okay. Is there standard protocol that Hendricks Regional Health requires you to use when you take a legal blood draw?
>
> [Cannon]: Yes[,] there is.
>
> \*     \*     \*
>
> \*     \*     \*
>
> [State]: Ms. Cannon, uh did Hendricks Regional Health have a protocol for conducting legal draws in October of 2009?
>
> [Cannon]: Yes.
>
> [State]: Was that protocol signed by a physician?
>
> [Cannon]: Yes.
>
> [State]: Was that protocol directed by a physician?
>
> [Cannon]: Yes.
>
> \*     \*     \*
>
> \*     \*     \*
>
> [State]: Uh, Miss Cannon, the protocol that I just showed you, I just admitted that to the Judge, is that the protocol you followed? When you took a blood draw from Brett Boston?
>
> [Cannon]: Yes.
>
> \*     \*     \*
>
> \*     \*     \*
>
> [State]: \* \* \* Ms. Cannon, what does the protocol for Hendricks Regional Health say?
>
> [Cannon]: It, it states in there to identify the patient, obtain a toxicology blood kit from the State Trooper, Officer, or Deputy. Uh, draw the patient's blood. Initial anything on there that is done outside of the norm. Anything I seal outside of the norm, initial it, date it. Hand the specimens back to the officer for him to seal. And, give them back to his custody. And follow the protocol from the hospital. . . .

(Tr. 19, 24, 29, 33). The trial court then took the matter under advisement.

On July 16, 2010, the trial court issued an order denying Boston's motion to suppress blood alcohol test results. On August 9, 2010, Boston filed a motion for certification of interlocutory appeal, which motion was granted on August 10, 2010. On August 30, 2010, he filed a motion to accept jurisdiction of an interlocutory appeal. On October 12, 2010, we accepted jurisdiction of Boston's interlocutory appeal.

## DECISION

Boston argues that the trial court erred in denying his motion to suppress the results of his blood alcohol test. Specifically, he argues the State failed to satisfy the foundational requirements of the version of Indiana Code section 9–30–6–6 that was in effect at the time of his arrest. We disagree.

### 1. *Statutory Amendment*

In relevant part, Indiana Code section 9–30–6–6 governs chemical tests on blood, urine, and other bodily substances for evidence of intoxication. The version of the statute that was in effect at the time of Boston's arrest ("the 2006 version[3]") differs significantly from the version ("the 2010 version") that was in effect at the time of the suppression hearing. Boston argues that the trial court improperly applied the 2010 version of the statute retro-

---

**3.** The version of the Indiana Code section 9–30–6–6 that was in effect at the time of Boston's arrest in 2009 resulted from legislative amendments made in 2006. During the 2010 legislative session, our legislature made further amendments to the statute that are of particular relevance to our inquiry herein.

actively in denying his motion to suppress the blood alcohol test results.

■■ As a general rule, statutes will not be applied retroactively absent strong and compelling reasons. *Bourbon Mini-Mart, Inc. v. Gast Fuel and Services, Inc.,* 783 N.E.2d 253, 260 (Ind.2003). An exception exists for remedial statutes, *i.e.* statutes intended to cure a defect or mischief that existed in a prior statute. *Id.* "Ultimately, ... whether a statute applies retroactively depends upon the intent of the General Assembly." *Id.* (citing *Martin v. State,* 774 N.E.2d 43, 44 (Ind.2002)). Thus, when considering a remedial statute, the court must construe it to carry out the legislative purpose of the statute, "unless doing so violates a vested right or constitutional guaranty." *Id.*

Both the 2006 and the 2010 versions of Indiana Code section 9–30–6–6(j) enumerate certain "persons who are trained in obtaining bodily substance samples," for purposes of conducting blood draws pursuant to law enforcement investigations. Among these, the 2006[4] version of the statute included "[a] certified phlebotomist." I.C. § 9–30–6–6(j)(7) (2006). On March 12, 2010, the General Assembly approved an amendment, designated "effective upon passage," whereby it eliminated the "certified phlebotomist" language and added that "[subsection (j) ] does not apply to a bodily substance sample taken at a licensed hospital ..." I.C. § 9–30–6–6(j) (2010); *see P.L. 36–2010.*[5]

In *Brown v. State,* 911 N.E.2d 668 (Ind. Ct.App.2009), handed down on August 21, 2009, we analyzed whether a certified lab technician was a person "trained in obtaining bodily substance samples" for the purposes of Indiana Code section 9–30–6–6(j) (2006). The panel concluded that the certified lab technician did not meet the statutory requirements, noting,

> If the General Assembly intended subsection (j) to include certified lab technicians instead of, or in addition to, certified phlebotomists, it easily could have done so. It did not do so, however, and therefore we must conclude that the trial court abused its discretion in admitting the results of Brown's blood test [into evidence].

4. Indiana Code section 9–30–6–6(j) provided as follows at the time of Boston's arrest:

   A law enforcement officer may transport the person to a place where the sample may be obtained by any of the following persons who are trained in obtaining bodily substance samples and who have been engaged to obtain samples under this section:
   (1) A physician holding an unlimited license to practice medicine or osteopathy.
   (2) A registered nurse.
   (3) A licensed practical nurse.
   (4) An emergency medical technician-basic advanced (as defined in IC 16–18–2–112.5).
   (5) An emergency medical technician-intermediate (as defined in IC 16–18–2–112.7).
   (6) A paramedic (as defined in IC 16–18–2–266).
   (7) A certified phlebotomist.

5. The 2010 amendment of Indiana Code section 9–30–6–6(j) altered the statute as follows:

   (j) This subsection does not apply to a bodily substance sample taken at a licensed hospital (as defined in IC 16–18–2–179(a) and IC 16–18–2–179(b)). A law enforcement officer may transport the person to a place where the sample may be obtained by any of the following persons who are trained in obtaining bodily substance samples and who have been engaged to obtain samples under this section:
   (1) A physician holding an unlimited license to practice medicine or osteopathy.
   (2) A registered nurse.
   (3) A licensed practical nurse.
   (4) An emergency medical technician-basic advanced (as defined in IC 16–18–2–112.5).
   (5) An emergency medical technician-intermediate (as defined in IC 16–18–2–112.7).
   (6) A paramedic (as defined in IC 16–18–2–266).

*Id.* at 673. Accordingly, we granted Brown's motion to suppress the results of his blood test. On December 17, 2009, our Supreme Court granted transfer in *Brown.* Soon thereafter, on March 12, 2010, in amendments deemed effective "upon passage," our General Assembly quickly amended Indiana Code section 9–30–6–6(j) by eliminating the "certified phlebotomist" language and adding that "[subsection (j)] does not apply to a bodily substance sample taken at a licensed hospital. . . ." Notably, on May 26, 2010, our Supreme Court rescinded its grant of transfer and vacated its order.

The State asserts that the 2010 amendment was "remedial in nature," reflecting "the legislature's intent to allow blood draws such as the one that occurred in this case to be admitted into evidence." State's Br. at 11. In its brief, it argues that

> the legislature acted immediately in response to *Brown* and amended the statute to eliminate the confusion created by the 'certified phlebotomist' language, since there is no Indiana certification for phlebotomy that exists, and to make sure that blood draws performed by trained individuals at licensed hospitals are admissible into evidence. Furthermore, they did so through an emergency provision that would be effective immediately upon passage. This shows the legislature's desire to remedy this problem quickly to prevent any other blood draws from being deemed inadmissible. Indeed, the whole purpose behind this subsection was to protect the welfare of the suspect and the integrity of the sample by making sure that blood draws are

performed by people with the proper training and qualifications.

> Cannon undeniably has the requisite training and qualifications, and [Boston] has not presented any evidence even suggesting that [Cannon] did anything improper when she drew [his] blood. The *Brown* Court's interpretation of the subsection threatened to thwart the legislature's purpose by needlessly excluding samples drawn by qualified individuals in a manner that the General Assembly had never intended when blood draws were being performed at hospitals and thus presumably in keeping with the statute's concerns.

State's Br. at 11. We find the State's arguments to be persuasive.

■ Various strong and compelling reasons justify the retroactive application of the 2010 amendments. The instant statute is in many ways analogous to Indiana's implied consent statutes [6] which are aimed at "keep[ing] Indiana highways safe and protect[ing] the public by removing the threat posed by the presence of drunk drivers on the highways." *Abney v. State,* 811 N.E.2d 415, 419 (Ind.Ct.App.2004). In this vein, we have previously held that Indiana Code section 9–30–6–6(g) is meant to provide law enforcement investigators with "a tool to acquire evidence of blood alcohol content." *Id.* at 422.

In *Combs v. State,* 895 N.E.2d 1252, 1256 (Ind.Ct.App.2008), we stated,

> Indiana Code § 9–30–6–6 provides that blood samples collected at the request of a law enforcement officer as part of a criminal investigation must be obtained by "[a] physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a

---

**6.** "The Implied Consent statutes are aimed at providing law enforcement officers with implied consent for performing chemical tests on drivers who are either thought to be intoxi-

cated or who have been involved in an accident involving a fatality or serious bodily injury." *Abney,* 811 N.E.2d at 420.

protocol prepared by a physician[.]" Ind.Code § 9–30–6–6(a). This is not a requirement that may be ignored. As our Supreme Court has recognized, "the foundation for admission of laboratory blood drawing and testing results, by statute, involves technical adherence to a physician's directions or to a protocol prepared by a physician."

The changes to Indiana Code section 9–30–6–6 are not substantive in nature. Rather, the General Assembly's acts of (1) removing "certified phlebotomist[s]" from the list of persons authorized to perform blood draws, and (2) interjecting that the "authorized person" determination need not be made where the bodily substance sample is "taken at a license hospital," evince its acknowledgment that blood draws which are performed in state-licensed hospitals observe and embody the "technical adherence" to a physician's directions or to a physician's protocol required by our evidentiary rules for the admission of blood test results. *See Hopkins v. State,* 579 N.E.2d 1297, 1303 (Ind. 1991); *see also Combs,* 895 N.E.2d at 1256.

Based upon the foregoing, we conclude that the 2010 amendments to Indiana Code 9–30–6–6 were remedial in nature, motivated by strong and compelling reasons aimed at public safety and welfare. As such, we find no abuse of discretion from the trial court's retroactive application of the 2010 amendments and reliance, thereon, in denying Boston's motion to suppress the results of his blood alcohol test. *See Bourbon Mini–Mart,* 783 N.E.2d at 260.

■■ We further note that the trial court's retroactive application of the remedial 2010 amendments did not violate con-stitutional prohibitions against ex post facto criminal sanctions.

The ex post facto clauses prohibit Indiana from enacting a law that imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed. The focus of the ex post facto inquiry is not on whether the legislative change causes a disadvantage. Instead, we must determine whether the change increases the penalty by which a crime is punishable or alters the definition of criminal conduct.

*Brown v. State,* 912 N.E.2d 881, 888–89 (Ind.Ct.App.2009) (internal quotations and citations omitted).

■■ "Procedural [ ] or remedial law is that portion of the law which prescribes *the method of enforcing a right or obtaining a redress* for the invasion of that right"; while, "[s]ubstantive law, ... is that portion of the law which *creates, defines and regulates rights.*'" *Id.* at 889. The ex post facto clause "is not designed 'to limit legislative control of remedies and modes of procedure which do not affect matters of substance.'" *Id.* "Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto."

We have previously held that "[a]n amendment is 'procedural in nature for purposes of the ex post facto doctrine, and may be applied to crimes committed before the effective date,' if it 'neither changes the elements of the crime nor enlarges its punishment.'" *Id.* Such is the case herein. Retroactive application of our legislature's 2010 amendments neither enlarges Boston's punishment nor changes the elements[7] of his crimes. As such, we con-

---

7. In order to convict Boston of class A misdemeanor operating a motor vehicle while intoxicated, the State was required to prove beyond a reasonable doubt that he "operate[d] a motor vehicle with an alcohol concentration equivalent to a least fifteen-hun-

clude that the application of the 2010 revisions do not violate Indiana's prohibition against ex post facto laws and we proceed to apply them herein.

### 2. *Motion to Suppress*

■ Boston also argues that the trial court erred in denying his motion to suppress the blood test results because the State failed to establish a proper foundation. In light of our discussion above, we cannot agree.

■ Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Ackerman v. State,* 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *trans. denied.* We review the admission of evidence for an abuse of the trial court's discretion. *Taylor v. State,* 891 N.E.2d 155, 158 (Ind.Ct.App.2008), *trans. denied.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Cochran v. State,* 843 N.E.2d 980, 982–83 (Ind.Ct.App.2006), *trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Cole v. State,* 878 N.E.2d 882, 885 (Ind.Ct.App.2007). We consider evidence from the trial as well as evidence from the suppression hearing that is not in direct conflict with the trial evidence. *Kelley v. State,* 825 N.E.2d 420, 427 (Ind.Ct.App. 2005).

As noted above, we find that our legislature's acts of (1) removing "certified phlebotomist[s]" from the list of persons authorized to perform blood draws, and (2) interjecting that the "authorized person" determination need not be made where the bodily substance sample is "taken at a licensed hospital," reflect its acknowledgment that blood tests which are performed in state-licensed hospitals employ the "technical adherence" to a physician's directions or to a physician's protocol required by our evidentiary rules for the admission of blood test results. *See Hopkins v. State,* 579 N.E.2d 1297, 1303 (Ind. 1991); *see also Combs,* 895 N.E.2d at 1256.

In light of our finding that the remedial amendments to Indiana Code section 9–30–6–6 (2010) may properly be applied to Boston's claim, he cannot demonstrate that Cannon failed to satisfy the foundational requirements of the statute. The record reveals that she drew Boston's blood at Hendricks Regional Health Hospital; and Boston does not challenge that hospital's status as a state-licensed hospital. Thus, there is sufficient evidence of probative value to support the trial court's denial of Boston's motion to suppress. We find no abuse of discretion from the trial court's admission of Boston's blood alcohol test results into evidence.

Affirmed.

NAJAM, J., and BAILEY, J., concur.

■

---

dredths gram of alcohol per one hundred milliliters of his blood" or "two hundred ten (210) liters of the person's breath"; or that he "operate[d] a vehicle while intoxicated . . . in a manner that endanger[ed] a person." I.C. §§ 9–30–5–1, –2.