**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAY WALLACE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1107-CR-645 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable J. Richard Campbell, Judge
Cause No. 29D04-1007-FD-3456

**February 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Tony Horn gave Jay Wallace $1500 in cash to buy materials to do plumbing work that Wallace had agreed to perform in Horn's basement. Although Wallace promised to purchase materials and begin the work immediately, Wallace never returned to Horn's residence. For more than ten days, Wallace did not begin the work and refused to return the money to Horn. A jury found Wallace guilty of class D felony theft, and the trial court sentenced Wallace to a 1095-day sentence, with 365 days executed in the Department of Correction, 365 days executed on work release, and 365 days suspended to probation. Wallace contends that the evidence is insufficient to sustain his conviction, that the trial court abused its discretion when it admitted certain evidence, and that his sentence is inappropriate in light of the nature of the offense and his character. Finding the evidence sufficient, no abuse of discretion, and concluding that Wallace did not meet his burden to show that his sentence is inappropriate, we affirm.

**Facts and Procedural History**

The facts most favorable to the jury's verdict indicate that in May 2010, Horn decided to finish his basement. He wanted the finished basement to include a full bathroom. In order to achieve this, Horn looked for local plumbers on Craigslist.[1] Horn contacted three plumbers, one of whom was Wallace, to obtain quotes. On May 3, 2010, Wallace traveled to Horn's home and took measurements. Within a few hours, Wallace emailed Horn a quote of

---

[1] As noted by both parties, Craigslist is an online user-generated classified advertising forum.

2

$2499 for completion of the plumbing project. Wallace's bid for the project was in the middle of the three quotes Horn obtained – cheaper than one, and more expensive than the other.

On Wednesday, May 5, 2010, Horn called Wallace to inform him that he wanted to hire Wallace for the project. Wallace came to Horn's house that evening. Wallace told Horn that he needed $1500 in advance to purchase materials for the project. Although Horn was "not real comfortable" giving Wallace money prior to any work being completed, he did give Wallace fifteen $100 bills and asked him to sign a receipt for the money. Tr. at 36-37. Wallace signed the receipt and indicated that he would immediately travel to a plumbing supply store to get materials. Wallace stated that he would rent a jackhammer and return that night to "bust up the concrete floor." *Id.* at 37. Wallace did not return to Horn's residence that night. Instead, he called Horn and told him that traffic was bad and that he would not make it back. Wallace agreed that he would return to the residence at 8:00 the next morning to begin work.

The next morning, Thursday May 6, Wallace did not return. He texted Horn that he was in the hospital with his girlfriend because she was being checked for chest pain. He said that he would be at Horn's later that day or, at the latest, the following morning. On Friday, May 7, at 9:17 a.m., Wallace informed Horn that he was still at the hospital but just waiting for the last doctor to come in to release his girlfriend. He stated that he would soon be at Horn's house to begin work. When Horn had not heard from Wallace that evening, he texted Wallace inquiring as to his whereabouts and requesting that Wallace call him. Wallace

declined to call and instead merely text messaged Horn that he was still at the hospital. Horn texted Wallace that "I either need to get my money back so I can hire someone or you need to start this job." State's Ex. 4.

On Saturday, May 8, Horn texted Wallace and asked him again to return the money. Wallace indicated that he was still at the hospital. Horn texted, "What hospital? I will come to you and get my money." *Id*. Wallace responded, "I[']ll be ther[e]." *Id*. Wallace did not come to Horn's residence and did not respond to repeated inquires about repaying the money or about when he could begin the job. Wallace eventually texted Horn stating that Horn could not hire another contractor because he had a contract with Wallace, that Wallace would maybe start the job the following weekend, and that now they were testing Wallace's girlfriend for cancer. He refused to telephone Horn despite repeated requests. Meanwhile, Horn discovered that Wallace's business name, "J & M Heating and Cooling, Plumbing, Inc.," was continually posting updated advertisements for new jobs on Craigslist. Horn could not understand how Wallace could be looking for new jobs when he could not even begin the one that Horn had already given him money for. Tr. at 42-43.

Consequently, Horn contacted Officer Matt Griffin of the Noblesville Police Department. Officer Griffin offered to contact Wallace and attempt to mediate the situation. Officer Griffin called Wallace. Wallace told Officer Griffin that his girlfriend was in the hospital but refused to tell Officer Griffin his girlfriend's name or which hospital. Wallace hung up on Officer Griffin "numerous times," cursed at Officer Griffin, and refused to give any explanation for his unwillingness to return Horn's money or to begin the job.

4

On May 9, Horn left a voicemail for Wallace again asking for Wallace to return his money. Ten to fifteen minutes later, Wallace called Horn. Wallace was irate and threatened Horn that "you have no idea who you are f***ing with … I can come in your home and you won't even know that I am there. I know where you live." *Id*. at 49. At the urging of Officer Griffin, Horn continued to correspond with Wallace via texting until Sunday, May 16, 2010. Wallace had promised to arrive at Horn's house that morning to finally begin the work. Wallace did not. As of that date, Wallace had neither returned any money to Horn nor completed any work on the plumbing project.

On July 19, 2010, the State charged Wallace with class D felony theft and class A misdemeanor intimidation. A jury trial was held on May 26, 2011. The jury found Wallace guilty of class D felony theft and not guilty of class A misdemeanor intimidation. Following a sentencing hearing, the trial court sentenced Wallace to 1095 days, with 365 days executed in the Department of Correction, 365 days executed in the Hamilton Community Correction Work Release program, and 365 days suspended to probation. This appeal ensued.

**Discussion and Decision**

***I. Sufficiency of the Evidence***

Wallace first challenges the sufficiency of the evidence to support his theft conviction. Our standard of review is well settled:

> Upon review of a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. We will affirm a conviction unless, considering only the evidence and reasonable inferences favorable to the verdict, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of

5

innocence. Instead, the evidence is sufficient if an inference may reasonably be drawn from it to support the jury's verdict.

*Stokes v. State*, 922 N.E.2d 758, 763 (Ind. Ct. App. 2010) (citations omitted), *trans. denied.*

To convict Wallace of class D felony theft, the State was required to prove that Wallace knowingly or intentionally exerted unauthorized control over Horn's money, with the intent to deprive Horn of any part of its value or use. *See* Ind. Code § 35-43-4-2. Control over property is "unauthorized" if it is exerted "in a manner or to an extent other than that to which the other person has consented," or "by promising performance that the person knows will not be performed." Ind. Code § 35-43-4-1(b)(2) and -(6).

Horn gave Wallace $1500 with the sole purpose that Wallace would use the money that same day to purchase materials and begin a plumbing job. Wallace never returned to Horn's residence with the materials as promised and never performed any part of the job despite ample opportunity to do so. To no avail, Horn repeatedly expressed his dismay to Wallace and repeatedly asked for the money or the materials that Wallace supposedly purchased. Wallace refused to account for the money or the materials. Based upon all the evidence presented, a reasonable inference was that Wallace never actually purchased the materials with Horn's money. To that extent, it was reasonable for the jury to infer that Wallace knowingly exerted control over Horn's money in a manner or to an extent other than that to which Horn consented.

Similarly, there was sufficient circumstantial evidence to support the conclusion that Wallace promised performance that Wallace knew would not be performed. Based upon Wallace's behavior from May 5, through May 16, the jury could reasonably infer that, from

6

the beginning, Wallace never actually intended to perform the plumbing job at Horn's residence. Indeed, when given the opportunity to remedy the situation and/or to explain his behavior, Wallace refused to cooperate with Officer Griffin, who was merely trying to help Wallace avoid criminal liability. The State presented sufficient evidence from which the jury could conclude that Wallace's control over Horn's money was unauthorized when he promised performance that he knew would not be performed.

On appeal, Wallace merely points to his self-serving testimony that he did purchase materials with Horn's money and that he intended to perform the plumbing job at the time he took Horn's money. Wallace asks us to reweigh the evidence and reassess witness credibility in his favor, tasks not within our prerogative on appeal. The State presented sufficient evidence to sustain Wallace's conviction for class D felony theft.

## II. Admission of Evidence

Wallace additionally claims that the trial court abused its discretion when it admitted evidence that his company continued to post advertisements for new jobs on Craigslist while Wallace claimed to be at the hospital and unable to perform the job at Horn's residence.[2] We need not address the merits of this claim, as any error in the admission of this evidence by the trial court was harmless. "Error is harmless if 'the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction.'" *Tolliver v. State*, 922

---

[2] Wallace objected to the evidence on hearsay grounds and on grounds that there was "an authentication issue." Tr. at 41-42.

N.E.2d 1272, 1278 (Ind. Ct. App. 2010) (quoting *Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000)), *trans. denied*. As illustrated above, we are confident that the State presented substantial independent evidence of Wallace's guilt such that there is no substantial likelihood that the challenged evidence contributed to his theft conviction.

### III. *Appropriateness of Sentence*

Wallace maintains that his sentence is inappropriate in light of the nature of the offense and his character. The sentencing range for a class D felony is between six months and three years, with the advisory sentence being eighteen months. Ind. Code § 35-50-2-7. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

Regarding the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Here, Wallace claims that rather than the maximum three-year sentence for class D felony theft imposed by the trial court, his behavior warranted much less, as this case would have been better suited

for a civil small claims action. However, Wallace has no one to blame but himself. He took Horn's money, offered questionable excuses for continually failing to perform, and refused to return the money despite numerous requests. He left an innocent homeowner feeling helpless and cheated. Significantly, when given the opportunity to avoid criminal liability, Wallace unequivocally refused to cooperate with law enforcement. Under the circumstances, Wallace has not shown that the nature of his offense, or what we may describe as an apparent scam, warrants a lesser sentence than that imposed by the trial court.

Regarding his character, Wallace has similarly not met his burden to show that a lesser sentence is appropriate. Wallace has an extensive criminal history consisting of at least fifteen misdemeanor convictions and one felony conviction. As noted by the State, Wallace has had his probation revoked three times. During sentencing in the instant case, Wallace indicated no remorse, continually blamed the victim, and accepted no responsibility for his crime. Consequently, we affirm Wallace's sentence and decline his invitation to second-guess the trial court.

Affirmed.

MAY, J., and BROWN, J., concur.