**Matthew WIDDUCK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0603–CR–189.

Court of Appeals of Indiana.

Feb. 28, 2007.

Marshelle Dawkins Broadwell, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge.

Matthew Widduck ("Widduck") was convicted of Class A misdemeanor possession of paraphernalia in Marion Superior Court. He appeals, raising the following restated issue: whether the trial court abused its discretion in admitting evidence resulting from the search of a vehicle in which he was a passenger. Concluding that the evidence was properly admitted, we affirm.

**Facts and Procedural History**

On December 10, 2005, Indianapolis Police Officer Larry Stargel ("Officer Stargel") observed a blue Dodge Durango without a license plate traveling on West 29th Street in Indianapolis. Officer Stargel stopped the Durango on the southbound entrance ramp of Interstate 65 from West 29th Street. Officer Stargel observed Widduck sitting in the passenger seat. The driver informed Officer Stargel that he did not have a license plate or registration for the vehicle. Officer Stargel cited the driver for failure to register and "made the determination at that point in time that [he] was going to tow the vehicle." Tr. pp. 21–22. He began an inventory search of the Durango and discovered what he believed to be a crack pipe on the front passenger seat floor-board. Officer Stargel then arrested Widduck for possession of paraphernalia.

After arresting Widduck, Officer Stargel decided not to tow the vehicle "[b]ecause of [his] assessment on the scene, through their cooperation and everything" and instead allowed the driver to drive from the scene. Tr. p. 25.

The State charged Widduck with Class A misdemeanor possession of paraphernalia. Following a bench trial, Widduck was convicted and sentenced to 365 days with 364 days suspended and one day credit for time served. On February 24, 2006, Widduck filed a motion to file a belated appeal, which the trial court granted. He now appeals his conviction.

**Standard of Review**

■ Although Widduck originally challenged the admission of the evidence through a motion to suppress, he appeals following a completed bench trial and challenges the admission of such evidence at trial. "Thus, the issue is ... appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App.2003). Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Ackerman v. State*, 774 N.E.2d 970, 974–75 (Ind. Ct.App.2002), *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct.App.2005), *trans. denied*. However, we must also consider the uncontested evidence favorable to the defendant. *Id.* In this sense, the standard of review differs from the typical sufficiency of the evidence case where only evidence favorable to the verdict is considered. *Fair v. State*, 627 N.E.2d 427, 434 (Ind.1993).

## Discussion and Decision

Both the Fourth Amendment to the U.S. Constitution and Article I, Section 11 of the Indiana Constitution provide "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV; Ind. Const., art. I § 11. Created to protect the right to privacy, this protection against unreasonable state-sponsored searches and seizures is " 'a principal mode of discouraging lawless police conduct.' " *Jones v. State*, 655 N.E.2d 49, 54 (Ind.1995) (quoting *Terry v. Ohio*, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ When the police conduct a search without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Polk v. State*, 822 N.E.2d 239, 245 (Ind.Ct.App.2005), *trans. denied.* Widduck contends that the trial court erred when it admitted the crack pipe into evidence because the State did not establish that the search of the Durango fell within any of the recognized exceptions to the warrant requirement. In response, the State argues that the evidence was the product of an inventory search, a well-recognized exception to the warrant requirement. *See Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Woodford v. State*, 752 N.E.2d 1278, 1281 (Ind.2001); *Fair v. State*, 627 N.E.2d 427, 431 (Ind.1993).

■ Courts must examine all the facts and circumstances of a case to determine the reasonableness of an inventory search. *Fair*, 627 N.E.2d at 431 (citing *Opperman*, 428 U.S. at 375, 96 S.Ct. 3092). This examination typically encompasses two overlapping sets of circumstances. First, the propriety of the impoundment must be established because the need for the inventory arises from the impoundment. Second, the scope of the inventory must be evaluated. *Id.* Where either is clearly unreasonable, the search will not be upheld. "In borderline cases, however, the ultimate character of the search is often most clearly revealed when both the necessitousness of the impoundment and the scrupulousness of the inventorying are viewed together." *Id.*

■ In order to insure that the search is not a pretext "for general rummaging in order to discover incriminating evidence[,]" the State must establish that the search was conducted pursuant to standard police procedures. *Id.* (quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)). *See also Lyles v. State*, 834 N.E.2d 1035 (Ind.Ct.App.2005).

Here, Widduck contends that "[t]he search in the instant case simply was not an inventory search because it was not necessitated by an impoundment; therefore, the search could not have been proper under federal or Indiana jurisprudence." Br. of Appellant at 7. Thus, he challenges not the propriety of impoundment, nor the scope of the search, but rather the reasonableness of the search in light of Officer Stargel's subsequent decision not to tow the vehicle.

■ Indiana Code section 9–18–2–43(a) (2004) provides that an officer who discovers a vehicle in violation of registration and license plate requirements "shall take the vehicle into the officer's custody" and "may cause the vehicle to be taken to and stored in a suitable place" until the proper registration and license plates have been procured. Under the facts of this case, the statute required the officer to take the vehicle into custody. *See Goliday v. State*, 708 N.E.2d 4, 7 (Ind.1999).

Thus, impoundment of the Durango was proper, and we believe, under the circumstances, would have been preferable. Moreover, as this court has previously noted, inventory searches conducted at the impound lot by an officer assigned to such duties are greatly preferred to searches conducted at the scene, without a warrant, by the arresting officer. *See Edwards v. State,* 762 N.E.2d 128, 134 (Ind. Ct.App.2002), aff'd *on reh'g by* 768 N.E.2d 506, *trans. denied.*

However, the touchstone of Fourth Amendment analysis is "reasonableness." *See, e.g., Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). While we believe this case to be a "close call," the record before us is devoid of any indicia of pretext or subterfuge for general rummaging. Under the particular facts and circumstances of this case, we cannot conclude Officer Stargel's subsequent decision to allow the driver to leave with the vehicle renders the initial inventory search unreasonable. Therefore, we conclude that the trial court did not abuse its discretion when it admitted the crack pipe into evidence.

Affirmed.

KIRSCH, C.J., and SHARPNACK, J., concur.