Mark A. KOLISH, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 66A03–1009–CR–493.

Court of Appeals of Indiana.

May 31, 2011.

John D. Fierek, Voyles, Zahn, Paul, Hogan & Merriman, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mark Kolish appeals his conviction for operating a vehicle with an alcohol concentration of at least .15 gram of alcohol per 100 milliliters of his blood, a Class A misdemeanor, following a bench trial. He presents two issues for our review:

1. Whether the search warrant used to obtain Kolish's blood sample was supported by probable cause.

2. Whether the trial court abused its discretion when it admitted the results of the blood test into evidence at trial.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On June 9, 2009, at approximately 10:09 p.m., Kolish was operating a pickup truck in Pulaski County when Pulaski County Deputy Sheriff John Rogers observed Kolish drive his truck across the center line of the highway three times, twice nearly colliding with oncoming vehicles. Deputy Rogers initiated a traffic stop and observed that Kolish appeared intoxicated. In particular, Deputy Rogers smelled a strong odor of alcoholic beverage emanating from the truck and Kolish's person; observed that Kolish's eyes were red and watery; and noticed that Kolish's speech was slurred. In addition, Deputy Rogers saw two coolers and several empty beer cans in the back of the truck. Kolish admitted to Deputy Rogers that he had consumed alcohol.

Deputy Rogers attempted to administer two field sobriety tests, but Kolish was unable to complete either test. Accordingly, Deputy Rogers advised Kolish of Indiana's implied consent law, and Kolish agreed to a certified chemical test of his blood alcohol content. Deputy Rogers transported Kolish to the Pulaski County Jail, but after they arrived Kolish began to "cough and belch intentionally." Appellant's App. at 5. Accordingly, Deputy Rogers transported Kolish to Pulaski Memorial Hospital for a blood test. After they arrived at the hospital, Kolish stated his refusal to submit to a blood draw.

Deputy Rogers then submitted a probable cause affidavit and obtained a search warrant authorizing and ordering the blood draw on Kolish. The results of the blood test showed that Kolish's blood alcohol concentration was .16%. On July 23, 2009, the State charged Kolish with operating a vehicle with an alcohol concentration of at least .15 gram of alcohol per 100 milliliters of his blood, a Class A misde-

meanor. Kolish moved to suppress the evidence of his blood alcohol concentration on two grounds. First, Kolish asserted that the search warrant was not supported by probable cause. In particular, Kolish maintained that Deputy Rogers did not sufficiently state the date and time of the alleged offense in his probable cause affidavit. Second, Kolish argued that the medical care provider who drew his blood was not qualified by Indiana statute to draw his blood and that she did not follow the hospital's protocol in performing the blood draw. The trial court denied the motion to suppress. Following a bench trial, the trial court found Kolish guilty as charged and entered judgment and sentence accordingly. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Probable Cause Affidavit

■ Kolish first contends that the trial court erred when it issued the search warrant to obtain his blood sample. In particular, Kolish maintains that Deputy Rogers' probable cause affidavit is devoid of any reference to the date or time of the deputy's alleged observations of Kolish. Thus, Kolish claims that "there simply are no facts to support a finding that the trial court had a substantial basis to believe that alcohol would still be in Kolish's blood at the time the search warrant was issued." Brief of Appellant at 8. We cannot agree.

The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution require that search warrants be supported by probable cause. *See Combs v. State,* 895 N.E.2d 1252, 1255 (Ind.Ct.App.2008), *trans. denied.* In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit

... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Query v. State,* 745 N.E.2d 769, 771 (Ind.2001) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* It is clear that a substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id.* A "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* In this review, we consider only the evidence presented to the issuing magistrate and not post hoc justifications for the search. *Id.*

Again, Kolish's sole contention on this issue is that the probable cause affidavit makes no reference to the date or time that Deputy Rogers observed Kolish. While the affidavit is not dated and does not refer to a specific time of day, Deputy Rogers does state the following with regard to the time of the alleged crime:

[T]here is *now* being concealed certain evidence, namely: blood and urine in [Kolish], which is evidence of the crime of operating while intoxicated and tends to show that said person committed such offense; that *unless samples of said blood and urine are obtained for chemical analysis forthwith,* the opportunity to make such analysis will be lost forever[.]

Appellant's App. at 34 (emphases added). We agree with the State that Deputy Rogers adequately informed the magistrate that at the time he submitted the probable cause affidavit, there was a fair probability

that Kolish's blood contained evidence of a crime.

Further, this court has held that "using a common sense approach, [a probable cause] affidavit and [a search] warrant may be read together where there is a sufficient relationship between the two documents to justify testing the sufficiency of one with some reference to the other." *Foster v. State*, 633 N.E.2d 337, 343 (Ind. Ct.App.1994). Here, the search warrant was issued at 12:10 a.m. on June 10, 2009, within a couple of hours of Kolish's arrest, and the probable cause affidavit was filed contemporaneous with the issuance of the warrant. On these facts, when the affidavit and warrant are read together, the absence of the date and time on the affidavit is not fatal to the probable cause determination. And we hold that the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant.

## Issue Two: Admissibility of Blood Test

Kolish contends that the blood test results were inadmissible on two grounds, namely, the failure of the health care provider to follow the hospital's protocol in drawing the blood sample and that the health care provider was not authorized to perform the blood draw under Indiana Code Section 9–30–6–6(j). We address each contention in turn.

### Standard of Review

Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Widduck v. State*, 861 N.E.2d 1267, 1269 (Ind.Ct.App.2007). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.*

### Protocol

■ Indiana Code Section 9–30–6–6(a) sets out the foundational requirements for the admission of chemical tests on blood and states as follows:

A physician or person trained in obtaining bodily substance samples and acting *under the direction of or under a protocol prepared by a physician,* who:

(1) obtains a blood, urine, or other bodily substance sample from a person, regardless of whether the sample is taken for diagnostic purposes or at the request of a law enforcement officer under this section; or

(2) performs a chemical test on blood, urine, or other bodily substance obtained from a person;

shall deliver the sample or disclose the results of the test to a law enforcement officer who requests the sample or results as a part of a criminal investigation.

(Emphasis added).

Here, the evidence shows that the hospital's protocol for collecting blood samples pursuant to a police investigation states in relevant part that "Laboratory personnel drawing the blood will use PVP Iodine 10% USP, or any appropriate non-alcohol skin cleaner, to prep the arm. No alcohol preps will be used." Appellant's App. at 98. On appeal, Kolish directs us to the deposition testimony of the health care provider, Judith Joseph, that she had used an alcohol skin cleaner to prep Kolish's arm before drawing the blood sample. But on cross-examination at the suppression hearing, Joseph testified that she "didn't remember" what she had used to prep Kolish's arm. Suppression Hearing Transcript at 113. Kolish argues that Joseph's equivocal testimony on which preparation was used undermines her testimony that she followed the hospital's protocol during the blood draw.

But the State directs us to Deputy Rogers' testimony that he watched Joseph prep Kolish's arm with a brown liquid before she drew his blood. And the undisputed evidence shows that the alcohol-based preparations used by the hospital staff for blood draws are colorless and that the non-alcohol prep is a brown color. Accordingly, the evidence supports a determination that Joseph followed the hospital's protocol in prepping Kolish's arm for the blood draw. We will not reweigh that evidence.

### Joseph's Authority

 Kolish next contends that Joseph is not a person listed in Indiana Code Section 9–30–6–6(j) and was not, therefore, authorized to draw his blood for the chemical test. Section 9–30–6–6(j) in effect at the time of Kolish's arrest provided in relevant part that

A law enforcement officer may transport the person to a place other than a hospital where the sample may be obtained by any of the following persons who are trained in obtaining bodily substance samples and who have been engaged to obtain samples under this section:
(1) A physician holding an unlimited license to practice medicine or osteopathy.
(2) A registered nurse.
(3) A licensed practical nurse.
(4) An emergency medical technician-basic advanced (as defined in IC 16–18–2–112.5).
(5) An emergency medical technician-intermediate (as defined in IC 16–18–2–112.7).
(6) A paramedic (as defined in IC 16–18–2–266).
(7) A certified phlebotomist.

However, our Legislature recently amended this statute by adding the following sentence: "This subsection does not apply to a bodily substance sample taken at a licensed hospital (as defined in IC 16–18–2–179(a) and IC 16–18–2–179(b))." *Id.* (West 2010). Here, there is no dispute that Kolish's blood sample was taken at a licensed hospital. And this court has recently held that the 2010 amendment to the statute applies retroactively without violating Indiana's prohibition against ex post facto laws. *See Boston v. State,* 947 N.E.2d 436, 443–44 (Ind.Ct.App.2011). We agree with the panel decision in *Boston.* Accordingly, we are not persuaded by Kolish's contention that Joseph was not authorized by statute to perform the blood draw. The trial court did not abuse its discretion when it admitted the blood test results into evidence.

Affirmed.

ROBB, C.J., and CRONE, J., concur.