**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 30 2013, 5:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JESSE R. POAG**
Newburgh, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

HENRY L. NEWTON,                          )
                                          )
    Appellant-Defendant,                  )
                                          )
        vs.                           )    No.  82A05-1301-CR-22
                                          )
STATE OF INDIANA,                         )
                                          )
    Appellee-Plaintiff.                   )

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1205-FA-594

August 30, 2013

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

After a midnight crime rampage during which appellant-defendant Henry L. Newton terrorized an eighty-two-year-old man by tying him up and robbing him of his debit cards and PIN's, he now appeals his convictions for Burglary,[1] a class A felony, Robbery,[2] a class B felony, and Theft,[3] a class D felony. Specifically, Newton argues that his convictions for burglary as a class A felony and robbery as a class B felony violate double jeopardy principles, the trial court erred in admitting evidence found during a search of his home and denying his motion for a mistrial, and the evidence was insufficient to support his conviction for burglary as a class A felony.

We conclude that Newton's convictions for burglary as a class A felony and robbery as a class B felony violate double jeopardy principles, but the trial court did not err in admitting evidence or denying his motion for a mistrial, and there is sufficient evidence to support his burglary conviction as a class A felony. Thus, we affirm in part, reduce Newton's class B felony robbery conviction to a class C felony conviction, and reduce the class B felony robbery sentence from twelve years to a class C felony sentence of four years. Because the sentence for the robbery conviction runs concurrently to the sentence for the burglary sentence, Newton's aggregate sentence does not change.

---

[1] Ind. Code § 35-43-2-1.

[2] Ind. Code § 35-42-5-1.

[3] I.C. § 35-43-4-2.

2

About midnight on April 13, 2012, thirty-six-year-old Henry Newton, armed with a gun, broke into eighty-two-year-old James Moll's home and threatened to kill him. Newton took Moll into the bathroom, tied his hands behind his back with an extension cord, and placed him on the floor on his back with his head against the end of the bathtub. Newton then took two debit cards from Moll's wallet, demanded that Moll give him the PIN to each card, and left Moll's house when Moll complied with his demand.

Moll eventually freed himself around 8:30 the following morning and contacted the police. Evansville Police Department Detective Brent Melton was dispatched to Moll's home. When Moll told him about the stolen debit cards, Detective Melton contacted Fifth Third Bank. Three days later, the Bank notified Detective Melton that someone had withdrawn money from Moll's accounts by using the debit cards at two different ATM's. One card was used at an ATM near Moll's house about ten minutes after he was robbed, and the other card was used at an ATM at Casino Aztar about 9:30 the following morning. Evansville Police Department Detectives Tony Walker and Doug Hamner watched the video surveillance footage from both ATM's and both detectives recognized Newton as a potential witness in a prior unrelated case. Detective Hamner also recognized Newton from the local library where the detective worked as an off-duty security officer.

Detective Melton arrested Newton at Newton's hotel room at approximately 11:30 a.m. on May 9, 2012. A judge issued a search warrant at 3:50 p.m. that same day.

Detectives Melton and Hamner then searched Newton's room. During the search, the detectives found a fleece jacket with a distinctive New Orleans, LA, USA logo, a light blue button down shirt, a gray, red and white jacket, and a pair of black pants, all worn by Newton when he withdrew cash from the ATM's using Moller's debit cards as shown in the surveillance videos. Detective Melton left a copy of the search warrant in Newton's motel room.

On May 14, 2012, the State charged Newton with burglary, a class A felony, criminal confinement, a class B felony, robbery resulting in bodily injury, a class B felony, armed robbery, a class B felony, and theft, a class D felony. The State also alleged that Newton was a habitual offender.

Before trial, Newton filed a motion to suppress all evidence found during the search of his motel room. Newton alleged that detectives violated his constitutional rights by searching his room before the search warrant was issued. The trial court denied Newton's motion after a hearing. At trial, during the cross-examination of Detective Hamner, defense counsel pointed out that the detective's report stated that he executed the search warrant at 3:15 p.m. but that the warrant was not issued until 3:50 p.m. Therefore, according to defense counsel, Detective Hamner must have searched Newton's motel room before the search warrant was issued. The detective explained that Newton's room was not searched until after the warrant was issued. According to Detective Hamner, he distinctly remembered that Detective Melton had a copy of the search warrant with him when they searched the motel room. The detective further

4

explained that the time on his report was incorrect. Thereafter, over Newton's objection, the trial court admitted the evidence found during the search of Newton's motel room.

Also before trial, the trial court granted Newton's Motion in Limine and instructed Detective Hamner that he could only testify that he recognized Newton in the Casino Aztar surveillance video because Newton was a potential witness in another unrelated investigation and they had also met at the local library where the detective was an off-duty police officer. Newton did not object to the detective's testimony at trial. However, when Detective Melton testified that he recognized Newton in the police surveillance video, Newton objected and asked for a mistrial. Newton's counsel told the trial court that an admonition would not correct the error. The trial court denied Newton's motion and instructed Detective Melton, as it did Detective Hamner pursuant to the terms of Newton's Motion in Limine, that he could only testify that he recognized Newton in the surveillance video because Newton was a potential witness in an another unrelated investigation.

At trial, Moll testified that Newton tied his hands tightly behind his back with an extension cord and left him on his back with his head against the end of the bathtub. Moller, who initially felt that he had no chance of loosening the cord, was subsequently able to scoot into the hallway and free himself after being tied up for approximately eight hours. When he freed himself, his wrists were swollen and hurt and his back hurt. A photograph introduced into evidence showed bruised and swollen wrists.

5

The jury convicted Newton of burglary as a class A felony, robbery as a class B felony, and theft as a class D felony. Newton pleaded guilty to being a habitual offender. The trial court sentenced him to thirty-five years for the class A felony, enhanced by thirty years for being a habitual offender. The court also sentenced Newton to twelve years for the class B felony. Specifically, the trial court explained at the sentencing hearing that it was not enhancing the sentence for the class B felony conviction because it did not believe it was appropriate to enhance more than one sentence.[4] The court further sentenced Newton to two years for the class D felony and ordered the sentences to run concurrently for a total executed sentence of sixty-five years. Newton appeals.

## DISCUSSION AND DECISION

### I. Double Jeopardy

At the outset we note that Newton argues, and the State concedes, that Newton's convictions for burglary as a class A felony and robbery as a class B felony violate double jeopardy principles governed by rules of statutory construction and common law, which are not governed by the constitutional test set forth in Richardson v. State, 717 N.E.2d 32 (Inc. 1999). They are correct. In Pierce v. State, 761 N.E.2d 826, 830 (Ind. 2002), the Indiana Supreme Court explained that among these rules is the doctrine that where a burglary conviction is elevated to a class A felony based on the same bodily injury that forms the basis of the class B robbery conviction, the two cannot stand.

---

[4] We note that although the trial court stated that it did not believe it was appropriate to enhance more than one sentence, the court sentenced Newton to a twelve-year term for the class B felony robbery conviction, which is two years more than the ten-year advisory sentence for a class B felony.

6

Here, because Newton's class A felony burglary conviction and class B felony robbery conviction were based on the same bodily injury, we reduce the robbery conviction to a class C felony. See id. Further, although the trial court sentenced Newton to a term that was two years above the advisory sentence for the class B felony robbery conviction, the court specifically stated that it was not appropriate to enhance more than one sentence. Based upon these comments, we believe that if the case was remanded, the trial court would sentence Newton to the advisory term for a class C felony. In addition, because the trial court ordered the sentence for the robbery conviction to run concurrently to the sentence for the burglary conviction, we believe the trial court would have ordered the burglary and robbery sentences to run concurrently. We therefore reduce the sentence for the class C robbery conviction to the four-year advisory sentence for a class C felony and order it to run concurrently to the sentence for the burglary conviction. There is no need to remand for resentencing when it is sufficiently clear that the trial court would impose an advisory sentence for the class C felony and order it served concurrently. See Cutter v. State, 725 N.E.2d 401, 410 n. 4 (Ind. 2000) (explaining there was no need for remand where it was sufficiently clear that the trial court would impose the maximum sentence for the class C felony and order it served consecutively).

## II. Admission of Evidence

Newton next argues that the trial court erred in denying his motion to suppress items found during a search of his motel room. Specifically, Newton contends that

7

detectives searched the room before the warrant was issued because Detective Melton's report states that he searched the motel room at 3:15 p.m. and the warrant was not issued until 3:50 p.m.

Although Newton originally challenged the admission of the evidence through a motion to suppress, he appeals following a jury trial and challenges the admission of such evidence at trial. Thus, the issue before this Court is whether the trial court abused its discretion in admitting evidence at trial. Widduck v. State, 861 N.E.2d 1267, 1269 (Ind. Ct. App. 2007). We do not reweigh the evidence, and we consider the conflicting evidence most favorable to the trial court's ruling. Id. However, we must also consider the uncontested evidence favorable to the defendant. Id. In this sense, the standard of review differs from the typical sufficiency of the evidence saw where only evidence favorable to the verdict is considered. Id.

Here, at trial, Detective Hamner testified that he distinctly remembered that Detective Melton had a copy of the search warrant with him when they searched the motel room. The officers even left a copy of the warrant in the room after the search. Detective Hamner explained that the time on his report was incorrect. The trial court believed the detective's testimony and admitted items found during the search of the motel room into evidence at trial. The trial court did not abuse its discretion. Newton's argument is a request that we reweigh the evidence, which we cannot do. See id.

### III. Sufficiency of the Evidence

Newton also argues that there is insufficient evidence to support his conviction for burglary as a class A felony because there is insufficient evidence that Moll suffered bodily injury. When we review a challenge to the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. Toney v. State, 961 N.E.2d 57, 58 (Ind. Ct. App. 2012). Rather, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. Id. We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

Pursuant to Indiana Code section 35-43-2-1, a person who breaks and enters the building or structure of another person with the intent to commit a felony in it, commits class C felony burglary. Burglary is elevated to a class B felony if it is committed while armed with a deadly weapon. Ind. Code § 35-43-2-1(1). Burglary is further elevated to a class A felony if it results in bodily injury to any person other than the defendant. I.C. § 35-43-2-1(2).

Newton claims that there was insufficient evidence to support a finding that Moll suffered bodily injury. Indiana Code section 35-41-1-4 defines bodily injury as any impairment of physical condition, including physical pain.[5] This Court has previously explained that all that is required to establish bodily injury is that the victim experiences

[5] Effective July 1, 2012, this statute was recodified at Indiana Code section 35-31.5-2-29. The definition of bodily injury remains the same.

9

any physical pain as a result of the defendant's actions. Toney, 961 N.E.2d at 60. The statute defining bodily injury contains no requirement that the physical pain be of any particular magnitude or duration. Id.

Here, eighty-two-year-old Moll's wrists were bound behind his back with an electrical cord and he was placed on his back in the bathroom with his head against the bathtub. Moll was subsequently able to scoot into the hallway and free himself after being tied up for approximately eight hours. Moll testified that his wrists hurt, and a photograph showed they were bruised and swollen. Moll also testified that his back hurt. This evidence is sufficient to establish that Moll suffered bodily injury. There is sufficient evidence to support Newton's conviction.

## IV. Denial of Newton's Motion for a Mistrial

Lastly, Newton argues that the trial court erred in denying his motion for a mistrial after Detective Melton testified that he recognized Newton in the police surveillance video. To succeed on appeal from the denial of a mistrial, a defendant must demonstrate that the conduct complained of was both error and had a probable persuasive effect on the jury's decision. Booher v. State, 773 N.E.2d 814, 820 (Ind. Ct. App. 2002). The decision to grant or deny a motion for a mistrial lies with the discretion of the trial court. Id. A mistrial is an extreme remedy granted only when no other method can rectify the situation. Id. Because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury, the trial court's determination of whether to grant a mistrial is afforded great deference on appeal. Id.

Here, Detective Melton testified that he recognized Newton in the surveillance video. He subsequently clarified that he recognized Newton as a potential witness in a prior unrelated investigation. This is the same testimony that Detective Hamner gave pursuant to a Motion in Limine and without objection. Further, surveillance videos showed Newton using Moll's debit card ten minutes after he left Moll's house. Newton was wearing a distinctively logoed fleece jacket, which was found in his motel room. Another surveillance video shows Newton using Moll's debit card the following morning at the Casino Aztar. Newton is wearing clothing that was also found in his motel room. In light of this evidence, Detective Melton's testimony that he recognized Newton in the surveillance video was unlikely to have had a probable persuasive effect on the jury's decision. We find no abuse of the trial court's discretion in the denial of Newton's motion for a mistrial.

The judgment of the trial court is affirmed in part, the class B felony robbery conviction is reduced to a class C felony conviction, and the sentence for the robbery conviction is reduced to four years.

FRIEDLANDER, J., and VAIDIK, J., concur.