## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 23 2017, 9:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph E. Waldron, *Appellant-Defendant,* | June 23, 2017 |
| | Court of Appeals Case No. 35A02-1701-CR-122 |
| v. | Appeal from the Huntington Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Thomas M. Hakes, Judge |
| | Trial Court Cause No. 35C01-1609-FC-155 |

**Najam, Judge.**

## Statement of the Case

Joseph E. Waldron brings an interlocutory appeal of the trial court's denial of his motion to suppress evidence, following a hearing on that motion. He raises one issue, namely, whether the trial court erred when it found that a search warrant included within its scope the seizure of electronic devices capable of storing video recordings from surveillance cameras. We affirm.

## Facts and Procedural History

On Tuesday, May 10, 2016, six-year-old A.W. disclosed to school personnel and police that Waldron, her father, had physically battered her with a Taser over the previous Friday and Saturday at their home in Huntington. Based upon the information from A.W., Huntington Police Detective Andrew Ellet ("Officer Ellet") obtained a search warrant that afternoon for Waldron's residence to search for and seize: "a taser, all surveillance cameras both inside and outside the home, and electronic devices used to store video recordings from the surveillance cameras." Appellant's App. at 28-29; State's Ex. 1. The search warrant also directed the officers "to search all recovered surveillance cameras and electronic devices for the following: video recordings or pictures involving child physical abuse." *Id*.

At around 4:00 p.m., Officer Ellet and other Huntington police officers executed the search warrant in Waldron's presence. The officers located in the home a digital video recorder ("DVR") connected to the indoor and outside surveillance cameras. Officer Ellet was aware that the purpose of the DVR was

to record video from the surveillance cameras and that it had limited capacity to store information. Within close proximity to the DVR, the officers also located a taser, a computer tower, a laptop computer, an internal hard drive, several cell phones, and a digital camera. The computer tower, the laptop computer, and the internal hard drive all had the capability of storing video recordings from the surveillance cameras transferred through the DVR over a wireless router. The officers did not know which electronic devices Waldron used to store the videos recorded by the DVR.

[4] Detective Ellet seized the taser, the laptop computer, the computer tower, the internal hard drive, and the DVR, including its hard drive. Indiana State Police Sergeant Jeremy Chapman ("Officer Chapman"), a forensic examiner of digital evidence and an audio visual enhancement specialist, examined the electronic devices and discovered on them evidence of child solicitation committed against a sixteen-year-old girl and images of child pornography. On September 1, 2016, the State charged Waldron with two counts of Class C felony child exploitation and one count of Level 6 felony possession of child pornography.

[5] On October 3, Waldron filed a motion to suppress, which alleged that the officers exceeded the scope of the warrant by seizing all electronic devices except the DVR. Specifically, Waldron argued that the language of the search warrant limited the seizure of evidence to only those electronic devices physically connected to the surveillance cameras, i.e., the DVR. Following a hearing on Waldron's motion to suppress, the trial court issued an order denying that motion. The trial court's order stated, in relevant part:

> The Court finds this attempt to restrict the ability of the officers to properly search for evidence with the [w]arrant is incorrect.
>
> The home had many devices upon which storage of video recordings from the surveillance cameras could have been stored. The Court could not have been aware of what was in the home and capable of storage. Therefore, devices capable of storage by connecting to the camera on the DVR would be allowed to be taken and searched by the [w]arrant.

Appellant's App. at 58.

[6] Waldron subsequently obtained an order certifying the order on his motion to suppress for interlocutory appeal. On February 24, 2017, we accepted jurisdiction of this interlocutory appeal.

## Discussion and Decision

[7] Waldron appeals the trial court's denial of his motion to suppress evidence. Our standard of review for the denial of a motion to suppress is similar to other sufficiency issues. *Gonser v. State*, 843 N.E.2d 947, 949 (Ind. Ct. App. 2006).

> We determine whether there is substantial evidence of probative value to support the trial court's ruling. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). We do not reweigh evidence and [we] construe conflicting evidence most favorably to the trial court's ruling. *Widduck v. State*, 861 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). We must also consider uncontested evidence favorable to the defendant. *Id.* The trial court's ultimate determination of the constitutionality of a search or seizure is, however, reviewed *de novo*. *Harper v. State*, 922 N.E.2d 75, 79 (Ind. Ct. App. 2010) (quoting *Crabtree v. State*, 762 N.E.2d 241,

244 (Ind. Ct. App. 2002)) (applying this standard to a *Terry* stop), *trans. denied*.

*Woodson v. State*, 960 N.E.2d 224, 226 (Ind. Ct. App. 2012).

[8] Waldron maintains that all electronic devices except the DVR were erroneously admitted into evidence because they were beyond the scope of the warrant to search his home.

> To protect a citizen's right to be free from unreasonable searches and seizures, our state and federal constitutions require officials to obtain a warrant before conducting searches and seizures. *Green v. State*, 676 N.E.2d 755, 757 (Ind. Ct. App. 1996), *trans. denied*. A warrant may not issue unless an affidavit is submitted to a judge or magistrate, describing with particularity the place to be searched and the items to be seized. *Id*. The particularity requirement restricts the scope of the search, authorizing seizure of only those things described in the warrant; a warrant which leaves the executing officer with discretion is invalid. *Lee v. State*, 715 N.E.2d 1289, 1290 (Ind. Ct. App. 1999).

*Pavey v. State*, 764 N.E.2d 692, 702 (Ind. Ct. App. 2002), *trans. denied*. However, "[o]ur supreme court has noted that while the items to be searched for and seized must be described with some specificity, there is no requirement that there be an exact description." *Id*. (citing *Phillips v. State*, 514 N.E.2d 1073, 1075 (Ind. 1987)).

[9] Here, the search warrant authorized the police to search Waldron's home for "electronic devices used to store video recordings from the surveillance cameras," and to seize such items. Appellant's App. at 58. The warrant further

authorized the police to "search all recovered surveillance cameras *and electronic devices* for . . . video recordings or pictures involving child physical abuse." *Id.* (emphasis added). Officer Chapman, who had been employed as a forensic examiner of digital evidence for thirteen years, testified that recordings from the surveillance cameras could have been transferred from the DVR to the seized laptop computer, computer tower, and internal hard drive for storage. Such a transfer could have been accomplished either by a hard connection or through a wireless router. He testified that such a transfer was likely, given the limited storage capacity of the DVR. Moreover, the DVR unit had the capability of transferring data directly to the computer tower. Thus, the seized electronic devices were capable of storing "video recordings from the surveillance cameras." *Id.* And, since the officers obviously could have no way of knowing which, if any, of the devices actually stored such recordings until they searched each of them, the warrant authorized them to conduct such a search of each seized electronic device. *Id.*

[10] Waldron maintains that only the DVR fell within the scope of the warrant because it was the only device that was physically connected to the surveillance cameras at the time of the search. Thus, he contends, only the DVR could be used to store video recordings "from" the surveillance camera. That contention is without merit. The warrant contains no language limiting the search and seizure to electronic devices that happen to actually be attached to the surveillance camera at the time of the search. Nor does it limit the search to only devices that can directly record the video from the surveillance camera.

Rather, the plain language of the warrant applies to devices "used to store" recordings, and the evidence shows that the seized electronic devices were capable of such storage. Moreover, this was not a situation where the officers were authorized to seize one kind of item, but seized an item of unrelated character. *C.f. Ogburn v. State*, 53 N.E.3d 464, 474 (Ind. Ct. App. 2016) (holding seizure exceeded scope of warrant where the item seized "was not of the same character as" the items described in the warrant), *trans. denied*.

[11] The record contains substantial evidence of probative value to support the trial court's denial of Waldron's motion to suppress the electronic devices.

[12] Affirmed.

Riley, J., and Bradford, J., concur.